UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL RYAN GRIFFIN,

                          Petitioner,

        v.

RONALD HAYNES,

                          Respondent.

Case No. C22-5118-JHC-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a federal habeas action filed under 28 U.S.C. § 2254. Petitioner Daniel Ryan Griffin ("Petitioner"), proceeding *pro se*, is currently incarcerated at the Stafford Creek Corrections Center ("SCCC") in Aberdeen, Washington. Petitioner seeks relief under 28 U.S.C. § 2254 from a 2017 judgment and sentence of the Pierce County Superior Court. (Am. Pet. (dkt. # 5).) On June 22, 2022, Respondent filed an answer and memorandum of authorities to Petitioner's habeas petition ("Respondent's Answer") (Answer (dkt. # 12)) and submitted the State Court Record (State Court Rec. (dkt. ## 13-15)). On July 27, 2022, Petitioner filed a response to Respondent's Answer ("Petitioner's Response"). (Pet.'s Resp. (dkt. # 27).)

Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends that: (1) Petitioner's amended habeas petition (dkt. # 5) be

DENIED; (2) this action be DISMISSED with prejudice; and (3) a certificate of appealability be DENIED as to all claims. The Court further recommends that Petitioner's pending "Motion to Gather Basic Information" (dkt. # 30) be DENIED as moot.[1]

## II.    BACKGROUND

### A.    Statement of Facts

Petitioner is in custody under a state court judgment and sentence entered by the Pierce County Superior Court for convictions on one count of third-degree child molestation and six counts of communication with a minor for immoral purposes ("CMIP"). (*See* State Court Rec., Ex. 1 (dkt. # 13-1) at 1-2; *see also id*., Ex. 2 at 1-2 (vacating one of Petitioner's CMIP convictions).) The Washington Court of Appeals ("Court of Appeals"), on Petitioner's direct appeal, summarized the relevant facts underlying his convictions as follows:

A.    Initial Investigation

S.L. met Griffin in August 2014 through her mother's work. At the time, S.L. was 13 years old and Griffin was around 34 years old. The two exchanged cell phone numbers and regularly text messaged each other for the next 10 months. This communication culminated in a June 2015 incident in which Griffin invited S.L. to his home, tied her up with rope, and touched her bare breast with his hands and mouth.

On June 24, 2015, S.L. got into a fight with her stepmother. As punishment, S.L.'s stepmother took away S.L.'s cell phone. Later that evening, S.L.'s stepmother scrolled through S.L.'s text messages and noticed several messages from Griffin. Some of Griffin's messages encouraged S.L. to throw away her antidepressant medication. Other messages discussed emancipation, moving into an apartment together, and the size of S.L.'s minor girlfriend's breasts. S.L.'s stepmother contacted S.L.'s father.

---

[1] On September 14, 2022, Petitioner filed a motion seeking the Court's assistance in obtaining records of proceedings from the Pierce County Superior Court. (Dkt. # 30.) However, as previously noted in the Court's Order on Petitioner's Motion to Compel (dkt. # 26), Petitioner fails to explain the relevance and/or necessity of the records he is requesting for the resolution of his habeas claims. (*See* dkt. # 26 at 3.) Respondent concedes Petitioner's habeas claims are exhausted and this Court has previously determined, and Petitioner apparently agrees, that additional records are not required to resolve the instant habeas claims because they rest entirely on issues of law. (*See id.* at 4; Pl.'s Resp. at 2 ("Only matters of pure law are involved in this case . . . .").)

REPORT AND RECOMMENDATION - 2

S.L.'s father confronted S.L. about her relationship with Griffin, and S.L. admitted that she also communicated with Griffin on a mobile software application. S.L.'s father reinstalled the software application onto S.L.'s phone and began receiving messages from Griffin. S.L.'s father, acting as S.L., responded to Griffin's messages. Eventually, Griffin messaged S.L.'s phone the following:

> In the fantasy, I tie you to the desk, your leg to the desk leg, on both sides.
>
>      . . . .
>
> You would have a shoulder harness that would be tied to the front of the desk, holding you securely in place. Your elbows would be tied behind your back, your arms straight, so that they rested on your a**.
>
>      . . . .
>
> I expect you would be a little nervous, as I loomed over you with a perverted smile.
>
>      . . . .
>
> I would place a small bottle in one of your hands, and command you to apply the contents to your anus. You would squirm, and insist that *I* be the one to apply it. There would be a moment of silence, followed by several slaps of a flog across your back and thighs.

Exhibit 1 at 7-11 (we quote only appellant's texts for ease of readability).

S.L.'s father photographed the messages and contacted law enforcement. He also gave law enforcement S.L.'s cell phone for forensic examination.

B.    Search Warrants

Detective Bradley Graham of the Tacoma Police Department was assigned to investigate the case. On July 7, Detective Graham obtained a warrant to search Griffin's house for the following evidence:

> Bondage items to include handcuffs, ropes, gags, slings and restraints;
>
> Pictures of the victim that appear in any printed format;
>
> The cell phone of Daniel Griffin—phone number 253-***-****;
>
> Documents showing dominion and control of the residence; and

General crime scene processing to include photographing, videotaping and diagraming of the residence.

Clerk's Papers (CP) at 33. The search of Griffin's home unearthed rope, massage oil, sex toys, and Griffin's cell phone.

On July 9, Detective Graham submitted an application and affidavit in support of probable cause to obtain a warrant to search Griffin's cell phone for evidence of third[-]degree child molestation and [CMIP]. The application and affidavit stated in relevant part:

> On June 25th, 2015, Tacoma Police began a child sexual abuse investigation centering on the sexual abuse of 14 year old [S.L.] by Daniel Griffin (an adult male) who was an acquaintance of the family. The allegations were that Griffin fondled and licked the breasts of the victim, tied her up, and sent her sexually explicit text messages and photographs of his nude body. They communicated via cell phones.
>
> . . . .
>
> In the original search warrant, TPD Detective B. Graham asked that the defendant's cell phone be seized "to be forensically searched for the images and texts sent to the victim[.]"[ ]
>
> After turning the phone over [to] the TPD Cell Phone Forensics Unit, Detective Graham has learned that the seized phone—a Samsung Galaxy S4—is more than a simple cell phone and gives the user the ability to manipulate the data and images on the phone beyond simple storage in the default texting mode. This phone, according to its manufacturer, has numerous ways in which to convey communications. This includes user installed (downloaded) applications that allow no-traditional means to deliver desired content.
>
> . . . .
>
> The identification of any stored data requires a forensic search of the cell phone for:
>
> Contact/phone list—potentially indicates (confirms) relationship linkage between suspect and victim;
>
> Call history details—potentially indicates communication linkage between suspect and victim during the time frame disclosed by the victim;

Short Message Service (SMS) and Multimedia Message Service (MMS)—potentially could indicate the communication delivery type between the suspect and victim to include attachments (if any) such as video, images or sound files related to the victim's disclosure;

Images—potentially details and/or documents the relationship time frame and supports the charge of communicating for immoral purposes. Note: images can contain data that retains date and time created or accessed;

Video—potentially details and/or documents the relationship time frame and supports the charge of communicating for immoral purposes. Note: videos can contain data that retains date and time created or accessed;

User-installed applications: if installed and implemented, potentially could indicate the delivery of communications between the suspect and victim regarding relationship status to include sexually explicit communication;

Web history and bookmarks—potentially can detail any internet searches which aided in or helped in communicating sexually explicit images or data between the suspect and victim;

Emails—details communications to include attachments which could detail the relationship between the suspect and the victim.

CP at 86-87.

A judge issued a warrant to search Griffin's phone for:

Any and all stored data, to include but not limited to, assigned handset number, call details, images, sound files, text and multimedia messages, voice and sound files, music files, web and internet history, sim and microSD content, proprietary and secondary memory data to include deleted data, contained on: 1 Samsung Galaxy S4, containing a microsd memory card and SIM card, identified as belonging to Daniel Griffin.

CP at 89.

Law enforcement forensically examined Griffin's cell phone and extracted thousands of pages of records, including images, emails, text messages, call logs, GPS location data, and Griffin's internet browsing history. Five of the emails collected were between Griffin and prospective attorneys.

The State charged Griffin with one count of third[-]degree child molestation and four counts of communicating with a minor for immoral purposes.

C.    Pretrial Motions

Griffin learned that law enforcement had obtained his communications with attorneys through the State's discovery. Griffin informed the trial court at a status conference held on October 25, 2016, that law enforcement had obtained his attorney, client communications. He brought the privileged communications to court and asked the trial court to "review them in-camera today and make a determination and keep the current trial date." Verbatim Report of Proceedings ("VRP") (Oct. 25, 2016) at 5.

The trial court conducted an in-camera review of the documents and held a hearing the next day to address the issue. The trial court ruled that the pages were privileged. Griffin addressed the trial court and stated, "So I guess, then, at this point, the question is what to do about it, what the remedy is." VRP (Oct. 26, 2016) at 3. The prosecutor asserted that she had not read the privileged documents. Nonetheless, the trial court ruled that it would "just presume that because they were in [the State's] possession, somebody read them." VRP (Oct. 26, 2016) at 6-7. Based on its review of the documents, the trial court ruled that they were not prejudicial because they did not disclose any work product or trial strategy or tactic. Griffin moved for an order sealing the documents from public view, which the trial court granted.

Griffin subsequently filed a CrR 3.6 motion to suppress the evidence obtained through the search of his cell phone. Griffin argued that the search warrant lacked probable cause and failed to meet the particularity requirement of the Fourth Amendment. The trial court denied the motion.

D.    Relevant Portions of Trial

Prior to trial, the State filed an amended information, adding an additional count of third[-]degree child molestation and six additional counts of [CMIP]. The 10 allegations of [CMIP] were divided by monthly time periods beginning in September 2014 and ending in June 2015, with no charges filed for February and June divided into two separate charging periods.

1.    Trial Testimony

At trial, S.L.'s father, stepmother, and Detective Graham testified to the facts discussed above. The trial court also admitted the photographs of Griffin's messages on S.L.'s cell phone that S.L.'s father had photographed. S.L. testified that she spent an afternoon in June 2015 at Griffin's home. Griffin and S.L. were seated in the living room watching television when Griffin reached under S.L.'s shirt and grabbed one of her breasts over her bra. Griffin and S.L. moved to

Griffin's bedroom, where Griffin "tied [S.L.] up" with rope and moved her shirt and bra underneath her breasts. VRP (Jun. 19, 2017) at 1180. Griffin then touched S.L.'s bare breasts with his hands and mouth. Griffin told S.L. that her "body was beautiful," pulled down his pants, and exposed his erect penis to S.L. VRP (Jun. 19, 2017) at 1180.

S.L. also identified a video found on Griffin's cell phone, which depicted him masturbating. S.L. testified that Griffin sent her the video sometime after June 13. Law enforcement later testified that the masturbation video found on Griffin's cell phone had a creation date of June 15, 2015.

S.L.'s testimony also detailed hundreds of text messages Griffin had sent to her between October 2014 and June 2015. The trial court admitted several exhibits containing these messages, which were collected from the forensic search of S.L.'s cell phone. These exhibits showed that in October 2014, Griffin messaged S.L. about his sexual fantasies, masturbation, and BDSM conventions. These October messages included:

Sometimes, a nip-slip will do it for me.

. . . .

I need to get you into some good ol' STRAIGHT porn!

. . . .

So does a regular d***ing.

. . . .

I like boobs, p****, and women.

. . . .

I like yuri/sex, usually via BDSM.

. . . .

What are your thoughts on latex, ball gags, anal play, suspen[s]ion, clamps, and/or collars/leashes? For yourself or for use on others?

. . . .

BDSM orgy at my place this weekend. hehehe.

Exhibit 46 at 1, 5, 8, 9. Griffin and S.L. also texted about which of S.L.'s friends Griffin would choose to tie up, beat, and rape.

In November, Griffin messaged S.L., "I really shouldn't be—finishing—a 14 year old," "You should show [S.L.'s friend] a bdsm guro rape picture," and "maybe YOU ought to explain what ISN'T too tame for you the next time we chat." Exhibit 46 at 11, 12, 14. S.L. texted Griffin that S.L.'s minor girlfriend was "an

awesome kisser," and Griffin responded, "I'm not convinced that she's all that good. Right now the evidence is that ANYTHING passionate provides needed release." Exhibit 46B at 3, Exhibit 46 at 13.

At some point, Griffin purchased S.L. a vibrator. In December, Griffin texted S.L., "I'mm'a take a shower. Hmm, should I test your toy while I'm in there?" Exhibit 87. Later that month, Griffin messaged S.L. that he was masturbating and the two discussed a BDSM orgy.

In March 2015, Griffin texted S.L., "So, do your folks have anything particularly interesting? Whips 'n chains, perhaps? Maybe a strapon?" Exhibit 46 at 19. Griffin also texted that he had rope and oil. He also messaged S.L., "Unfortunately, when I'm depressed, so is my libido, but my body never stops generating it's 'supply[.]' Now I'm stuck at work, and . . . nevermind." Exhibit 46 at 20. At the end of March, Griffin messaged S.L., "Os yeah. . . I never fully woke up when you called. Your voice, and mental images of you ended up permeating my next dream cycle. THAT got . . . interesting." Exhibit 46 at 23.

In May, Griffin and S.L. discussed vibrators and Griffin messaged S.L., "So, more self-help toys. Does she know that you already have one, and that it's not really doing the trick?" Exhibit 46 at 35. Later, he messaged S.L., "How's the toy discussion going?" Exhibit 46 at 36. At the beginning of June, Griffin and S.L. again discussed vibrators. S.L. sent Griffin a picture of the vibrator she wanted to purchase, to which Griffin replied, "Huh. I figured you'd want something with more . . . bulk." Exhibit 46 at 38. Griffin also texted, "Now you'll have a surface vibe and a deep vibe. Sounds fun," and "You still need to get laid properly though." Exhibit 46 at 38.

Griffin's defense at trial was that he did not communicate with S.L. for immoral purposes because he openly discussed sex with many people in his life. To support this theory, Griffin called his mother and a childhood friend, Beverly McCarter, to testify on his behalf. Griffin attempted to elicit testimony from his mother that they had open discussions about sex. He also wanted his mother to testify that she had discussed "sexual experiences or sexual interests" with Griffin. VRP (Jun. 26, 2017) at 1899. The trial court ruled that this testimony was not relevant.

However, the trial court allowed Griffin's mother to testify that Griffin was raised to be "open and frank" about sex. VRP (Jun. 26, 2017) at 1903. Griffin's mother testified that she raised Griffin to be open about issues of sex and sexuality and to discuss them frankly. She also testified that it was "another subject matter to us." VRP (Jun. 26, 2017) at 1904.

McCarter testified that she met Griffin when the two were in high school. Griffin attempted to elicit testimony from McCarter regarding a sexual relationship between Griffin and McCarter as adults. This proffered testimony encompassed the

use of ropes and sex toys when the two were in a sexual relationship and the specific conversations that Griffin and McCarter had about sex. The proffered testimony also included McCarter testifying about her own "sexual issues back in high school;" "a medical condition which caused her to have an insatiable, elevated sexual drive;" and that she and Griffin discussed "the subject of sexuality . . . very frankly, very openly, intellectualized." VRP (Jun. 27, 2017) at 1971, 1980.

The trial court ruled that McCarter's proffered testimony was not relevant because "[t]here is a difference of talking with your friends who are adults, and talking with minors." VRP (Jun. 27, 2017) at 1981. However, the trial court allowed McCarter to testify to several emails that Griffin had sent to her discussing S.L. In one email, Griffin asked McCarter for "'guidance'" as to how he could convince S.L. "'to keep her libido to herself.'" VRP (Jun. 27, 2017) at 1993. This email also referenced the "'parallels'" between McCarter and S.L.'s sexual proclivities and Griffin's desire to "'keep [S.L.] out of trouble'" in coping with her "'high libido.'" VRP (Jun. 27, 2017) at 1992-93. In another email, Griffin described himself as S.L.'s sex counselor and stated that out of concern for S.L., he was considering informing S.L.'s mother of S.L.'s sexual proclivities. In a final email, Griffin admitted to McCarter that he had tied up S.L. in a full body harness, but assured McCarter that "no laws [were] actually broken." VRP (Jun. 27, 2017) at 2005. Griffin also explained that he tied S.L. up because he thought the experience would deter S.L. from the sexual desires she had communicated with him about. Griffin informed McCarter that he was "not sure how much more [he] [could] counsel this kid without crossing lines that really shouldn't be crossed." VRP (Jun. 27, 2017) at 2005.

Also, despite the trial court's ruling, McCarter testified to the sexual issues she experienced as an adolescent. She testified, without objection, that she often discussed her "uncontrollable" sex drive with Griffin during high school and described her own sex drive as "more intense than [her] peers." VRP (Jun. 27, 2017) at 1985.

(State Court Rec., Ex. 2 at 2-11 (footnotes omitted).)

## B.    Procedural History

Petitioner appealed his convictions and sentence to the Court of Appeals. (State Court Rec., Exs. 3-10.) On August 20, 2019, the Court of Appeals issued an unpublished opinion affirming Petitioner's convictions save for one count of CMIP, which was vacated. (*Id.*, Ex. 2 at 42-43.) Petitioner subsequently filed a motion for reconsideration, which was also denied by the Court of Appeals. (*Id.*, Exs. 11-12.)

Petitioner, proceeding *pro se*, next sought review by the Washington Supreme Court, ultimately filing a "motion to clarify," two motions "to modify," and a petition for review. (State Court Rec., Exs. 13-14, 17-18 (dkt. # 13-2).) Across his combined filings, Petitioner presented the following issues to the Washington Supreme Court:

1. The [Court of Appeals'] opinion of [Petitioner's Statement of Additional Grounds] is not even constitutionally valid.

2. The Washington Supreme Court unlawfully added new elements to CMIP in 1993.

3. The "predatory purpose" standard is vague. [Petitioner] wins a default judgment

4. The term "immoral purposes" is unlawfully vague.

5. CMIP is an overly broad regulation of speech.

6. The [Court of Appeals] failed to apply the contribution test for harmlessness analysis.

(*Id.*, Ex. 17 at 2.)

On February 2, 2022, the Washington Supreme Court denied review without comment. (State Court. Rec., Ex. 19.) On February 28, 2022, the Court of Appeals issued the mandate terminating direct review. (*Id.*, Ex. 20.) Petitioner did not file a personal restraint petition (*see* Answer at 12), and instead, filed his amended federal habeas petition on March 25, 2022. (*See* Am. Pet.) This matter is now ripe for federal habeas review.

### III.    GROUNDS FOR RELIEF

Petitioner's amended habeas petition identifies the following grounds for relief:

1. The Court of Appeals altered RCW 9.68A.090 (CMIP) so as to enlarge scope. U.S. Const. amend. V (due process-ex post facto) U.S. Const. amend. VI (nature of accusation). (Am. Pet. at 7.)

2.      The Washington Supreme Court altered RCW 9.68A.090 (CMIP) in 1993, violating U.S. Const. amend. V (due process-ex post facto enlargement, and vagueness). (*Id.* at 9.)

3.      RCW 9.68A.090 (CMIP) unlawfully regulates non-commercial viewpoint-based speech. U.S. Const. amend. I (speech). (*Id.* at 10.)

4.      Washington's harmlessness doctrine is federally deficient. It violates U.S. Const. amends. V and XIV (due process), search and seizure, and more. (*Id.* at 12.)

## IV.    DISCUSSION

Respondent concedes that Petitioner properly exhausted his state court remedies on his asserted grounds for relief because he fairly presented his claims to the Washington Supreme Court as federal claims. (*See* Answer at 12.) Respondent also concedes that Petitioner timely filed his habeas petition under 28 U.S.C. § 2244(d) as he filed it within one year after his judgment and sentence became final. (*See id.*) However, Respondent contends that Petitioner is not entitled to relief on any of the claims raised in his petition. (*See id*. at 17-30.)

In his Response, Petitioner: (1) withdraws his first and second grounds for relief; (2) concedes that an evidentiary hearing is unnecessary for adjudicating his remaining grounds for relief; and (3) provides argument addressing only his third and fourth grounds for relief. (*See* Pet.'s Resp.) The Court will therefore only examine Petitioner's third and fourth grounds for habeas relief on the merits.

### A.      Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly

1    established federal law, as determined by the Supreme Court, or if the decision was based on an

2    unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

3        Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

4    court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

5    or if the state court decides a case differently than the Supreme Court has on a set of materially

6    indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

7    "unreasonable application" clause, a federal habeas court may grant the writ only if the state

8    court identifies the correct governing legal principle from the Supreme Court's decisions, but

9    unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

10        The Supreme Court has made clear that a state court's decision may be overturned only if

11    the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

12    The Supreme Court has also explained that "[a] state court's determination that a claim lacks

13    merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

14    correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

15    (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

16        Clearly established federal law means "the governing legal principle or principles set

17    forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S.

18    at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the

19    legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary

20    to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d

21    952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

22        In considering a habeas petition, this Court's review "is limited to the record that was

23    before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.    Analysis**

    *1.    Ground Three: RCW 9.68A.090 unlawfully regulates non-commercial viewpoint-based speech*

First, Petitioner asserts in his third ground for relief that RCW 9.68A.090 unlawfully regulates non-commercial viewpoint-based speech. (*See* Am. Pet. at 10.) Specifically, Petitioner argues RCW 9.68A.090 facially violates his free speech rights because it criminalized his viewpoint-based communications with S.L. by its use of the term "immoral purposes." (*Id.*)

Respondent contends that Petitioner's challenge under his third ground for relief should be considered as an "as-applied" challenge because it requires analysis of his particular speech activity. (Answer at 22.) But in his response, Petitioner reiterates this ground raises only a facial challenge to RCW 9.68A.090 because no evidentiary facts are in dispute and the United States Supreme Court has consistently held laws targeting speech based on their content are presumptively unconstitutional. (Pet.'s Resp. at 3-4.) Petitioner also correctly notes that he failed to exhaust an "as-applied" challenge regarding RCW 9.68A.090 to the Washington Supreme Court. (*See* Pet.'s Resp. at 4 n.1; *see also* State Court Rec., Ex. 17 at 2.) Therefore, the Court will accept Petitioner's request to only consider his claim as a facial challenge to RCW 9.68A.090.[2]

---

[2] Even if interpreted as an "as-applied" challenge, Petitioner's claim similarly fails. Petitioner's federal habeas claim does not identify what particular speech activity proscribed by RCW 9.68A.090 should have been constitutionally protected as is necessary to raise an "as-applied" challenge. (*See* Am. Pet. at 10.) In any case, as the Court of Appeals concluded in rejecting Petitioner's direct appeal, RCW 9.68A.090 was not unconstitutionally vague as applied to Petitioner because he clearly made several communications of a sexual nature for his own sexual purposes to S.L., *i.e.*, inquiring into S.L.'s relationship with her

Considered as a facial challenge, Petitioner fails to demonstrate the Court of Appeals'

decision below was either contrary to, or constituted an unreasonable application of, clearly

established federal law. First, the Court of Appeals considered Petitioner's overbreadth facial

challenge by examining the scope of RCW 9.68A.090 in light of the First Amendment and the

Washington Supreme Court's decisions in *State v. Hosier*, 157 Wash.2d 1 (2006) and *State v.*

*McNallie*, 120 Wash.2d 925 (1993). On this point, the Court of Appeals found:

> Griffin argues that the statute is impermissibly overbroad because it should
> be narrowed to proscribe only commercial speech. However, as our Supreme Court
> explained, the legislative findings contained in RCW 9.68A.001 "reflect legislative
> concern with adults who exploit children for personal gratification." *Hosier*, 157
> Wn.2d at 11. Thus, the statute is not intended to narrowly proscribe only
> commercial speech.
>
> The *Hosier* court also defined the word "communicate as transmission to
> and reception of a communication by a minor." 157 Wn.2d at 9. And it narrowed
> "immoral purposes" to communication with a child "'for the predatory purpose of
> promoting their exposure to and involvement in sexual misconduct.'" *Id.* (quoting
> *McNallie*, 120 Wn.2d at 933). Therefore, our Supreme Court has placed sufficient
> limiting constructions on the statute to ensure that a substantial amount of protected
> speech is not deterred.

(State Court Rec., Ex. 2 at 36.) Thus, the Court of Appeals concluded that, because *Hosier* and

*McNallie* provide that RCW 9.68A.090 does not reach a substantial amount of protected speech,

Petitioner's overbreadth claim failed. *Id.*

Likewise, the Court of Appeals found that RCW 9.68A.090 was not unconstitutionally

vague on its face in consideration of the Fourteenth Amendment's Due Process Clause. On this

aspect, the Court of Appeals noted:

> Griffin argues that the [CMIP] statute is unconstitutionally vague because
> the term "immoral purposes" is arbitrary. This argument fails because . . . the term

girlfriend, masturbation, the use of vibrators, and sexual fantasies involving fictional characters. (*See*
State Court Rec., Ex. 2 at 26-29.) Such communications were squarely made for the predatory purpose of
promoting S.L.'s exposure to and involvement in child molestation. *See* State Court Rec., Ex. 2 at 28; *see*
*also State v. McNallie*, 120 Wash.2d 925, 933 (1993).

REPORT AND RECOMMENDATION - 14

has been sufficiently narrowed to only proscribe communication with a minor "'for the predatory purpose of promoting their exposure to and involvement in sexual misconduct.'" *Hosier*, 157 Wn.2d at 9 (quoting *McNallie*, 120 Wn.2d at 933). And the legislative findings narrow the definition of "'sexually explicit conduct'" to "demarcate a line between protected and prohibited conduct and should not inhibit legitimate scientific, medical, or educational activities." RCW 9.68A.001. Thus, persons of ordinary intelligence can understand what the statute proscribes, even if there remains some possible areas of disagreement.

Griffin also argues that the statute is unconstitutional because "the morality of the majority cannot be the sole basis for criminal law." SAG at 18. As explained above, the rationale for the law is to protect children from adults who exploit children for their personal gratification, not the morality of the majority. RCW 9.68A.001; *Hosier*, 157 Wn.2d at 11. And again, contrary to Griffin's argument, the statute is not "supposed to be entirely commercial in nature." SAG at 24. The statute is not unconstitutionally vague, and Griffin's challenge on this basis fails.

(State Court Rec., Ex. 2 at 37.)

A state court's interpretation of state law is binding on a federal habeas court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Because Petitioner's facial challenge turns on an issue of state law—specifically, the proper interpretation of RCW 9.68A.090—the Court of Appeals' conclusion that RCW 9.68A.090 does not reach a substantial amount of protected speech, nor is impermissibly vague under Washington law, constrains this Court on federal habeas review. Therefore, Petitioner's claim fails to state a basis on which federal habeas relief may be granted.

However, even if this Court were to consider the substance of Petitioner's facial challenge, the Court notes that his claim has already been considered and soundly rejected by this Court. (Answer at 18-19 (citing *Schoening v. McKenna*, 636 F.Supp.2d 1154 (W.D. Wash. 2009).) In *Schoening*, the petitioner similarly requested that this Court find RCW 9.68A.090 violates the First Amendment as overbroad and vague. *Id.* at 1156. Of relevant note to the

REPORT AND RECOMMENDATION - 15

Petitioner's challenge here, the Court in *Schoening* reasoned RCW 9.68A.090 was not overboard because:

> The Washington Supreme Court has construed RCW 9.68A.090 to prohibit communicating with children with "the predatory purpose of promoting their exposure to and involvement in sexual misconduct." *Washington v. McNallie,* 120 Wash.2d 925, 931–32, 846 P.2d 1358, 1363 (1993). Plaintiff's concerns that the term "immoral purposes" could be the basis of a prosecution of—for example—a school nurse who advised a pregnant teenager about abortion options are unfounded, because the scope of the term "immoral purposes" has been limited to the category "sexual misconduct." *McNallie,* 846 P.2d at 1362 (noting that the controlling opinion in *State v. Schimmelpfennig,* 92 Wash.2d 95, 594 P.2d 442 (1979), supports this interpretation).
>
> Because the state Supreme Court has provided a narrowing construction, "there is no longer any danger that protected speech will be deterred and therefore no longer any reason to entertain the defendant's challenge to the statute on its face." *Osborne v. Ohio,* 495 U.S. 103, 115 n. 12, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (affirming the appropriateness of the Ohio Supreme Court relying on its own narrowing construction in evaluating the defendant's overbreadth claim).

*Id.* at 1157. The Court further found that the term "immoral purposes" was not impermissibly vague because it has been authoritatively construed to regard "the predatory purpose of promoting [children's] exposure to and involvement in sexual misconduct" and puts "a person of ordinary intelligence on notice of what conduct is prohibited, and provides a standard for law enforcement officials." *Id.* at 1158 (citing *McNallie,* 120 Wash.2d at 931-32).

Petitioner appears to acknowledge *Schoening* is dispositive of his challenge, but argues it should be overturned by this Court because it misinterpreted the progeny of Washington Supreme Court cases regarding RCW 9.68A.090. (*See* Pet.'s Resp. at 5-9.) This Court is not persuaded, nor does it find that *Schoening* was incorrectly decided. As Petitioner's facial challenge to RCW 9.68A.090 is nearly identical to that previously considered in *Schoening*, the Court similarly adopts the *Schoening* rationale and finds that RCW 9.68A.090 is not facially overbroad nor vague.

1    Because Petitioner fails to show that the Court of Appeals' determination regarding the

2    challenged statute was contrary to, or constituted an unreasonable application of, clearly

3    established federal law, and because this Court finds no reason to depart from the Court's prior

4    conclusions regarding RCW 9.68A.090 as set forth in *Schoening*, this Court recommends that

5    Petitioner's third ground for relief be denied.

6          2.    *Ground Four: Washington's Harmlessness Doctrine*

7          Petitioner argues in his fourth ground for relief that the harmless error analysis employed

8    by the Court of Appeals to address his Fourth Amendment search warrant challenge violated his

9    constitutional rights. (Am. Pet. at 12.) Specifically, Petitioner argues a "confession" to his

10   third-degree child molestation conviction was unlawfully obtained evidence that should have

11   been suppressed, and because Washington does not employ the "contribution" test in its harmless

12   error analysis, his "confession" was not tested for potential harm.[3] (*Id.*) Thus, Petitioner argues,

13   his constitutional rights to a jury and against self-incrimination were unlawfully bypassed by the

14   Court of Appeals. (*Id.*)

15         Respondent argues that Petitioner's challenge to the search warrant used in this matter is

16   barred pursuant to *Stone v. Powell*, 428 U.S. 465 (1976) as Petitioner had an opportunity for "full

17   and fair litigation of this claim in state court." (Answer at 28.) However, it appears from

18   Petitioner's response that he seeks to challenge both the "confession" used against him in this

19   case "which was seized pursuant to an overbroad and non-severable warrant," and the Court of

20   Appeals' harmlessness review test because the Court of Appeals used the "untainted evidence"

21   test instead of the "contribution" test. (*See* Pet.'s Resp. at 10-13.)

22   _____

23   [3] Petitioner's "confession" in this case regards an email obtained from Petitioner's cell phone that
     Petitioner sent to a friend where he stated that S.L had "convinced me to tie her up." (State Court. Rec.,
     Ex. 2 at 11 (citing VRP at 2005).)

REPORT AND RECOMMENDATION - 17

1    Here, whether considered as a facial challenge to the State of Washington's harmlessness

2    doctrine, or as a challenge premised on the admission of Petitioner's "confession," the Court of

3    Appeals' decision was not contrary to nor an unreasonable application of clearly established

4    Supreme Court precedent. First, Petitioner argues that United States Supreme Court case law

5    mandates the "contribution" test be used in state court harmless error analyses.[4] (Pet.'s Resp. at

6    13 (citing *Neder v. United* States, 527 U.S. 1, 15 (1999); *Chapman v. California*, 386 U.S. 18, 24

7    (1967).) In *Chapman*, the U.S. Supreme Court did not adopt the "contribution test" nor reject the

8    "untainted evidence" test. Instead, the Supreme Court adopted the "harmless beyond a

9    reasonable doubt" standard. *See Chapman*, 386 U.S. at 24. ("[B]efore a federal constitutional

10   error can be held harmless, the court must be able to declare a belief that it was harmless beyond

11   a reasonable doubt."). While *Chapman* noted a difference existed between the "contribution" test

12   and "harmless beyond a reasonable doubt" standard, *Chapman* did not prohibit state courts' use

13   of the "untainted evidence" test.[5] *See id.*

14   As the U.S. Supreme Court has not mandated using one test over the other, the Court of

15   Appeals' use of the "untainted evidence" test in its harmless error analysis to determine whether

16   any error was "harmless beyond a reasonable doubt" did not contradict clearly established U.S.

17   Supreme Court precedent. (*See* State Court Rec., Ex. 2 at 21-23.) Moreover, Petitioner's facial

18   challenge to Washington's harmless error test based on the State of Washington's use of the

19

20   ───────────────

[4] As opposed to the "untainted evidence test," the "contribution test" asks "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Chapman v.*

21   *California,* 386 U.S. 18, 24 (1967) (quoting *Fahy v. Connecticut,* 375 U.S. 85, 86-87 (1963)).

22   [5] Subsequent to *Chapman*, the U.S. Supreme Court also applied the "untainted evidence" test in *Harrington v. California* in context with the "harmless beyond a reasonable doubt standard." 395 U.S.

23   250, 254, (1969) ("[T]he case against Harrington was so overwhelming that we conclude that this violation . . . was harmless beyond a reasonable doubt.").

1    "untainted evidence" test has also previously been raised and rejected in this Court. *See Boysen*

2    *v. Herzog*, 2014 WL 5324885, at *2 (W.D. Wash. Oct. 16, 2014), *aff'd*, 633 F. App'x. 897 (9th

3    Cir. 2015) ("The Washington Court of Appeals' decision to uphold Petitioner's conviction, in

4    which it used the "untainted evidence" test to analyze Petitioner's Confrontation Clause claim,

5    did not contradict clearly established federal law.").

6        Furthermore, even if Petitioner's fourth ground for habeas relief were considered

7    substantively as to the "confession" email evidence seized, Petitioner's claim is clearly barred

8    under *Stone*. Where the State has provided an opportunity for "full and fair litigation of a Fourth

9    Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground

10   that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*,

11   428 U.S. at 494; *see also Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005). Therefore,

12   the relevant inquiry is whether the petitioner was afforded a full and fair hearing, not whether the

13   state court reached a correct resolution. *See Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir.

14   1994); *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990).

15       Here, the record demonstrates Petitioner sought exclusion of any evidence obtained

16   through the search of his cell phone in the trial court under Washington Superior Court Criminal

17   Rule ("CrR") 3.6, which provides a process for criminal defendants to seek to suppress

18   unlawfully obtained evidence.[6] (State Court. Rec., Ex. 2 at 7.) There, Petitioner argued that the

19

20   ───────────────
     [6] Washington CrR 3.6 provides that:

21       (a) Pleadings. Motions to suppress physical, oral or identification evidence, other than
         motion pursuant to rule 3.5, shall be in writing supported by an affidavit or document

22       setting forth the facts the moving party anticipates will be elicited at a hearing, and a
         memorandum of authorities in support of the motion. Opposing counsel may be ordered

23       to serve and file a memorandum of authorities in opposition to the motion. The court
         shall determine whether an evidentiary hearing is required based upon the moving papers.

warrant authorizing the search of his cell phone failed to meet the Fourth Amendment's

particularity requirement as well as Article I, Section 7 of the Washington Constitution. (*Id.* at

14.) Petitioner additionally pursued his suppression claims in the Court of Appeals on direct

review. (*Id.*) On this issue, the Court of Appeals noted:

> We agree that the evidence found on Griffin's cell phone should have been
> suppressed because the search warrant was not sufficiently particular. However, we
> hold that this error was harmless as to the third[-]degree child molestation
> conviction and six of the [CMIP] convictions. We are not persuaded by Griffin's
> other challenges raised on appeal. Accordingly, we affirm Griffin's third[-]degree
> child molestation conviction and six of his [CMIP] convictions, vacate one of
> Griffin's [CMIP] convictions . . .
>
>                                  . . . .
>
> [W]e hold that the error was not harmless as to the [CMIP] conviction based
> on Griffin's conduct between June 1, 2015 and June 24, 2015.

(State Court Rec., Ex. 2 at 2, 21.)

Thus, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims

in the Washington state courts, such that Petitioner was even successful in having one of his

CMIP counts vacated. As such, if his fourth ground for relief is construed to be a challenge to the

admission of his "confession," his suppression claims under the Fourth Amendment are not

cognizable in this habeas action. *See Stone,* 428 U.S. at 494 n.37. Accordingly, this Court

recommends that Petitioner's fourth ground for habeas relief be denied.

## V.    CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

---

If the court determines that no evidentiary hearing is required, the court shall enter a
written order setting forth its reasons.

(b) Hearing. If an evidentiary hearing is conducted, at its conclusion the court shall enter
written findings of fact and conclusions of law.

district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court recommends that a certificate of appealability be denied as to all claims.

## VI.    CONCLUSION

For the foregoing reasons, this Court recommends that Petitioner's amended habeas petition (dkt. # 5) be DENIED and this action be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be DENIED as to all claims. Finally, the Court recommends that Petitioner's "Motion for Basic Information" (dkt. # 30) be DENIED as moot. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 21, 2022.**

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable John H. Chun.

Dated this 28th day of September, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge